UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:24-CR-00095-GSL-APR |
| OCTAVIUS D. WILLIAMS | |

**OPINION AND ORDER**

A grand jury charged Defendant Octavius Williams with violating 18 U.S.C. § 922(g)(1), after Officer Daniel Paulson of the Gary Police Department saw him with a gun at a gas station. Defendant now moves to suppress the firearm and ammunition, on the basis that Officer Paulson's initial stop of Defendant violated the Fourth Amendment. [DE 27]. For the below reasons, the Court denies the motion.

**Background**

From January 3, 2024, through September 22, 2024, the Gary Police Department responded to 19 calls for service at the Clark Gas Station in Gary, Indiana. *See* [DE 36], Evidentiary Hearing on Defendant's Motion to Suppress, Government's Exhibit 3 (service calls) (on file with the Court).[1] At least two calls involved physical violence. *See* [*id.*]. Gary Police Officers have responded to numerous calls for shots fired in this area. [*Id.*].

On September 29, 2024, at around 3:45 p.m., Defendant drove his silver car to that gas station to buy cigarettes and to put air in his tires. [DE 36], Government's Exhibit 1 (surveillance footage), at 00:18–28.[2] Ten minutes later, as he was leaving, a burgundy car heading southbound

---

[1] All exhibits from the Evidentiary Hearing on Defendant's Motion to Suppress [DE 36] are on file with the Court.

[2] Subsequent citations to video exhibits admitted during the evidentiary hearing will specify the exhibit and include a pincite to that exhibit.

on Clark Road abruptly turned into the gas station, narrowly cutting in front of Defendant's car. [*Id.*], at 08:45–53. Defendant told the driver to slow down; in response, someone in the backseat of the burgundy car flashed a gun at him. [DE 27, Page 1]. As that car continued on toward the West 15th Avenue exit, Defendant abruptly parked his car. [DE 36], Gov't's Ex. 1, at 08:54–58. As seen on surveillance video, Defendant threw his car door open and started walking toward the burgundy car with a gun down by his side. [*Id.*], at 08:54–09:05; [DE 27, Page 1]. At the same time, Officer Paulson was heading north on Clark Road. [DE 36], Gov't's Ex. 1, at 09:00–08. He was alone on patrol. While passing the gas station, he saw Defendant's car door fly open and watched Defendant head toward the gas pumps with a gun in his hand. [DE 32, Pages 1–2]. He noticed that Defendant left his car in the middle of the gas station's entry way. [*Id.*]. Then, two things happened simultaneously: (1) Officer Paulson, now past the station, started a U-turn, and (2) Defendant turned around and walked back to his car. [DE 36], Gov't's Ex. 1, at 09:05–14.

Defendant drove only a few feet before he was met by Officer Paulson's parked patrol car. [*Id.*], at 09:16–30. Officer Paulson quickly exited his car with his gun drawn. [DE 36], Defendant's Ex. B (body came footage), at 00:12–22. Leaving his patrol car door open, he took cover near what looked like a clothes donation box, asking Defendant to show his hands. [DE 36], Def.'s Ex. B, at 00:22–28. Once both hands were visible, Officer Paulson approached him and asked where the gun was, and Defendant stated that it was under the front seat, and that it was legal. [*Id.*], at 00:28–43. Officer Paulson then handcuffed Defendant, completed a 7-second exterior pat down, secured the gun, reviewed Defendant's identification, and asked Defendant if he was a felon. [*Id.*], at 00:44–02:58. Defendant admitted that he was. [*Id.*]. A few moments later, after placing Defendant in his patrol car, Officer Paulson explained to Defendant's wife, who had just arrived, that Defendant would likely be charged with being a felon in possession of

a firearm and pointing a firearm. [*Id.*], at 13:07–21. A criminal complaint was filed, only charging Defendant as a felon in possession. [DE 1]. Following the grand jury indictment, Defendant filed a motion to suppress, on which the Court held an evidentiary hearing. [DE 36].

## **Discussion**

Defendant contends that Officer Paulson's initial stop lacked reasonable suspicion, since Indiana law allows for gun ownership without a license. *See* [DE 27]; *see also* Ind. Code. § 35-47-2-3(a). At the hearing, he argued that Officer Paulson initiated the stop because he thought Defendant pointed a weapon, and since that did not happen, the Officer's suspicion was pretextual, and therefore, not reasonable. [DE 36]. Accordingly, the firearm, ammunition, and any statements made during the encounter should be suppressed. [DE 27]. To the Government, the stop was reasonable because Officer Paulson was reacting to what he perceived to be a volatile emergency situation. [DE 32, Page 5]. The officer saw Defendant walking toward the gas pumps with a gun in his hand. [*Id.*, Page 1]. Coupled with the state in which Defendant left his car, Officer Paulson's surmised that Defendant was acting "in the heat of passion." [*Id.*, Page 7]. Based on his experience, Officer Paulson concluded that this could have been the start of a road rage incident. [DE 36]. Defendant responds by pointing out that he walked back to his car slowly, thereby dissolving any volatile emergency situation. [DE 36]. Therefore, Defendant contends, that justification for the stop was unavailable to Officer Paulson, and since Defendant never pointed the gun, the stop was unreasonable under the Fourth Amendment.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Lange v. California*, 594 U.S. 295, 301 (2021) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

Here, Defendant's contends that his Fourth Amendment rights were violated because Officer Paulson's decision to stop him was unreasonable. But "[p]olice officers may detain a suspect for a brief investigatory stop if they have a reasonable suspicion based on articulable facts that a crime *is about to be* or has been committed." *United States v. Williams*, 731 F.3d 678, 683 (7th Cir. 2013) (cleaned up) (emphasis added). "While reasonable suspicion requires something less than what is necessary to show probable cause, it requires more than a mere 'hunch.'" *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999) (cleaned up). "In determining whether a particular police-citizen encounter was supported by reasonable suspicion, courts must consider the totality of circumstances known to the officer *at the time of the stop*." *United States v. Quinn*, 83 F.3d 917, 921 (7th Cir. 1996) (citing *United States v. Cortez,* 449 U.S. 411, 417–18 (1981)) (emphasis added). When a crime is in progress or imminent, police action based on a lesser degree of probability can be reasonable, since "prompt action is essential" in such circumstances. *See U.S. v. Wooden*, 551 F.3d 647, 650 (7th Cir. 2008).

Defendant primarily argues that he was stopped because Officer Paulson thought Defendant was pointing a gun. [DE 27]. At the hearing, the Court inquired as to why that is important here, given that the Government contends that the stop was a justified response to an emergency situation. Defendant responded that this matters because Indiana law does not criminalize mere possession of a gun, and Officer Paulson did not know ahead of time that Defendant was a felon. So, Defendant argued, Officer Paulson could not have had reasonable suspicion of the charge in the indictment. But the legality of the stop does not turn on whether Defendant pointed a gun at someone, or whether the officer suspected that he was a felon. Instead, given how quickly this incident unfolded, this case turns on whether it was reasonable,

4

based on particularized facts, for Officer Paulson to suspect that a crime was about to happen or that a volatile emergency situation was unfolding. The Court finds that it was.

Officer Paulson testified that while on patrol, in what was known to him as a high-crime area, he saw Defendant walking with a gun in his hand toward people that were pumping gas. On top of that, he noticed where and how Defendant's car was parked: in the middle of the entrance driveway with the driver door left open. Based on his experience, Officer Paulson testified that he suspected a crime was about to happen, or that a volatile emergency situation was unfolding. The foregoing testimony is consistent with the surveillance video and body camera footage presented at the hearing. Also on the video, it can be seen that Officer Paulson leaves his own door open as he exits his patrol car and heads for cover. These actions are inconsistent with someone that has reason to believe that a potentially dangerous emergency situation had dissipated. Defendant attempts to neutralize the Government's justification that this was a volatile emergency situation so that he can return to his misplaced argument about the pointing of the gun. In doing so, Defendant argues that his slow walk back to his car demonstrates that any emergency had dissipated. As clearly seen in the surveillance video, at the moment that Defendant stopped walking toward the burgundy car, Officer Paulson was past the gas station; he could no longer see Defendant. The manner in which Defendant returned to his car was not in Officer Paulson's bundle of facts *at the time of the stop*. In the absence of contrary evidence, the Court finds that the surveillance video supports that proposition.

## Conclusion

Accordingly, the Court **DENIES** Defendant's Motion to Suppress Evidence [DE 27].

SO ORDERED.

ENTERED: May 14, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court